***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before Deputy Commissioner Pfeiffer as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
3. An employment relationship existed between plaintiff and defendant-employer on March 10, 2001.
4. Builders Mutual Insurance Company was the carrier on the risk.
5. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
6. Plaintiff alleges that he sustained an injury by accident arising out of and in the course of his employment on March 10, 2001.
7. Plaintiff's average weekly wage on March 10, 2001 was $689.99. This yields a compensation rate of $460.02.
8. The parties entered the following exhibits into the evidence of record at the hearing before the Deputy Commissioner:
a. Stipulated Exhibit 1 — plaintiff's medical records and discovery responses
b. Stipulated Exhibit 2 — employee timecards
c. Stipulated Exhibit 3 — plaintiff's recorded statement
d. Stipulated Exhibit 4 — correspondence
e. Stipulated Exhibit 5 — blueprints of the Dolittle house
f. Plaintiff's Exhibit 1 — a photograph of Dolittle job site
9. The issues before the Commission are whether plaintiff sustained an injury by accident in the course and scope of his employment on March 10, 2001, and if so, to what compensation is plaintiff entitled.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 55 years old and had completed the eleventh grade. On March 10, 2001 plaintiff had been employed by defendants as a lead painter for approximately four years.
2. Prior to March 2001, plaintiff had a long history of chronic low back pain following surgery on his lumbar spine in the early 1970s. Plaintiff also sustained a workers' compensation injury to his left knee on September 13, 2000 for which defendants admitted liability (I.C. No. 074798).
3. Plaintiff returned to work as a lead painter for defendants following his previous admittedly compensable left knee injury. However, in early March 2001 plaintiff was having difficulties at work due to his knee injury.
4. Plaintiff's supervisor, Mark Kirkpatrick, and plaintiff met on March 8, 2001 and at that time plaintiff agreed to take some time off to rest his knee. Plaintiff was instructed by Mr. Kirkpatrick to stay home and not work through at least Tuesday March 13, 2001, at which time he and Mr. Kirkpatrick would meet again and discuss whether plaintiff was going to report to a doctor for his knee complaints or remain out of work for an additional period of time.
5. Plaintiff was not authorized to work in any capacity for defendants until after the March 13, 2001 meeting with his supervisor.
6. The evidence differs regarding whether defendants had in place in March 2001 policies against working on the weekends, or whether employees needed advance approval before working on the weekend, or whether employees were permitted to work alone on a job site.
7. Timecards substantiate plaintiff's testimony that it was a regular occurrence for employees to work on the weekends. However, the testimony from plaintiff's coworkers and his supervisor confirm that employees knew they were not to work alone on a weekend without prior supervisory approval.
8. Mr. Kirkpatrick testified, in an opinion deemed to be credible and accepted as fact by the Commission, that employees were required to get prior supervisory approval before working on the weekend. It is undisputed from the evidence that no overtime work was permitted on the Dolittle property, the job site where plaintiff was working in March 2001.
9. On Friday, March 9, 2001, plaintiff spoke with a co-worker, Christopher Haywood, about Mr. Haywood's plans to work at the Dolittle site the following day. This would not have been overtime work for Mr. Haywood, as he had missed a day or two from work that week due to illness. Plaintiff informed Mr. Haywood that he would meet Mr. Haywood the following morning at the Dolittle site. Plaintiff's intention in meeting Mr. Haywood on Saturday, March 10, 2001 was to inform Mr. Haywood about recent paint color changes and to pick up plaintiff's personal tools.
10. Neither Mr. Haywood nor plaintiff requested permission from Mr. Kirkpatrick or Dave Opalecky, the construction supervisor on the Dolittle site, to be at the Dolittle site on Saturday or for Mr. Haywood to work alone at the site on Saturday March 10, 2001. Further, pursuant to plaintiff's March 8, 2001 conversation with Mr. Kirkpatrick, plaintiff was not supposed to be at work at all before March 13, 2001.
11. Plaintiff and his then-fiancée (now wife) went to the Dolittle house on Saturday morning, March 10, 2001. Mr. Haywood was not present, and for personal reasons never worked at all that day.
12. Plaintiff, however, wanted to get his tools from inside the house, so he retrieved the house keys and unlocked the front door. Plaintiff testified that he was unable to open the door more than a couple of inches because a piece of wood had apparently fallen down and was wedged behind the door. Plaintiff testified that he pushed harder against the door and it suddenly flew open, causing him to stumble inside and trip over some extension cords that were lying in a heap on the floor.
13. Plaintiff first reported to the emergency room at Cannon Memorial Hospital on March 10, 2001 where he reported that he fell down two flights of stairs. X-rays revealed advanced degenerative disc disease at C5-6 and C6-7. In addition, there was a mild compression fracture noted at T5, T7, and T9, "[a]ge indeterminate." A subsequent bone scan done a few weeks later was benign, indicating the compression fracture was not acute and therefore did not result from a fall on March 10, 2001.
14. Plaintiff reported to Dr. Joseph D. Barker, his internist, on March 17, 2001 with diffuse pain in his neck, upper back, mid-back, and left knee. Dr. Barker suspected musculoskeletal pain from soft tissue contusions sustained in the fall plaintiff reported.
15. Plaintiff continues to treat with Dr. Barker and he has also treated with the V.A. hospital. Dr. Barker does not feel plaintiff is capable of working at his former job as a painter, and likely not at all. Dr. Barker attributes plaintiff's symptoms and complaints to a fall at work on March 10, 2001. However, the Commission gives no weight to Dr. Barker's testimony on the causation of plaintiff's complaints, because Dr. Barker's opinion was based upon plaintiff's version of what transpired on March 10, 2001, which as found herein is not credible.
16. Plaintiff testified at the Deputy Commissioner hearing that his feet got tangled in the extension cords and that he proceeded to fall into the stairwell, which was more than 13 feet from the front door, and he fell and rolled down two flights of stairs. No one witnessed this event; however, in his recorded statement taken on March 23, 2001, plaintiff told the adjuster that his fiancée had seen him fall and had even helped him up.
17. At the hearing before Deputy Commissioner Pfeiffer, plaintiff testified that his fiancée was still in the truck when he fell. Plaintiff's fiancée was not present and did not testify at the hearing.
18. Shortly after the fall, plaintiff testified that his fiancée took a photograph of the entrance to the Dolittle house. This photograph was admitted into the evidence of record at the hearing before the Deputy Commissioner and shows the extension cords by the stairwell.
19. However, the photograph, on its face, is not persuasive evidence to prove that plaintiff fell down the stairwell. This photograph could have been taken at any time or on any date. The photograph does not show any extension cords or other items lying directly in front of the doorway.
20. The Full Commission finds according to the credible evidence of record that defendants' employees were diligent about cleaning up job sites, and the cleanliness of defendants' worksites was "exceptional." In addition, employees always cleaned up the job sites on Fridays, and specifically, the employees cleaned the Dolittle job site on Friday, March 9, 2001 prior to leaving the premises.
21. Defendants' lead carpenter testified, in testimony that was deemed credible by the Deputy Commissioner and accepted as fact by the Full Commission, that there was not a board or piece of wood in front of the doorway when he left work on Friday evening. This carpenter was one of the first employees on the Dolittle job site on Monday morning, March 12, 2001, and he did not see a board or extension cords in front of the doorway, but he did find pieces of boards on the landings of the stairwell.
22. The stairwell in the Dolittle house was more than 13 feet from the doorway. Based upon a totality of the evidence and testimony presented, and also taking into account plaintiff's demeanor and credibility, it seems unlikely that, even if the door was wedged closed by a board and even if it did take force for him to open the door, plaintiff then stumbled 13 feet into the house and got tangled up in extension cords and fell into and down a stairwell.
23. Plaintiff's version of his fall on Saturday, March 10, 2001 was not deemed credible by the Deputy Commissioner and is not accepted as credible by the Full Commission. Therefore, plaintiff failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident of March 10, 2001.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident on March 10, 2001 to his back in the course and scope of his employment with defendants. N.C. Gen. Stat. § 97-1(6).
2. In that, plaintiff has not proven that he sustained a compensable injury by accident within the North Carolina Workers' Compensation Act, he is entitled to no benefits under the Act. N.C. Gen. Stat. § 97-1,et seq.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is, DENIED.
2. Each party shall bear its own costs of this proceeding.
This the ___ day of January 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/mlb